# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| LANCE B. ROBEY, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 1:16-CV-281-TLS |
| WEAVER POPCORN COMPANY, INC., | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Plaintiff, Lance B. Robey, has sued his former employer, Weaver Popcorn Company, Inc. The Plaintiff alleges that the Defendant retaliated against him and interfered with his attempt to secure leave under the Family Medical Leave Act (FMLA). This matter is before the Court on the Defendant's Motion for Summary Judgment [ECF No. 22], filed on August 17, 2017. The Defendant maintains that the undisputed material facts show that the Plaintiff was not eligible for FMLA leave. Further, the Plaintiff is not entitled to recover for retaliation because he cannot establish that there was a causal connection between his attempt to take leave and his termination from employment, that he was meeting his employer's legitimate expectations, that similarly situated employees who did not engage in protected activity were treated more favorably, or that the Defendant's non-retaliatory reasons for taking the adverse actions were a pretext for retaliation.

## BACKGROUND

On June 24, 2016, the Plaintiff, proceeding pro se, filed a Complaint in state court against his former employer. The Defendant removed the matter to federal court on grounds that the

Plaintiff's Complaint contained a claim under the FMLA, 29 U.S.C. § 2601, *et seq.* In addition to invoking federal question jurisdiction pursuant to 28 U.S.C. § 1331, the Defendant asserted that any remaining state law claims were removable pursuant to 28 U.S.C. § 1441(c).

On August 17, 2017, the Defendant filed its Motion for Summary Judgment, requesting that the Court enter judgment in its favor as a matter of law. On this same date, the Defendant filed a Notice of Summary Judgment Motion [ECF No. 25], advising the Plaintiff of the implications of the Motion, his response obligations, and the consequences of failing to read and carefully follow Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1. The Plaintiff has not filed a response to the Defendant's Motion for Summary Judgment, or asked for any extensions of time to do so.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "To survive summary judgment, the nonmoving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016) (first quoting *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 349 (7th Cir. 2015); then citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). To determine whether a genuine dispute of

material fact exists, the Court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). This does not extend to inferences that are "supported by only speculation or conjecture," *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)), and "[c]onclusory allegations alone cannot defeat a motion for summary judgment," *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892–93 (7th Cir. 2003).

At the summary judgment stage, the Court does not consider an assertion of fact unless it is supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). If a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Finally, material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997).

## MATERIAL FACTS

The Defendant is a manufacturer of popcorn products with a production facility in Van Buren, Indiana. In June 2012, the Defendant hired the Plaintiff as a machine operator.

According to the Defendant's Attendance Policy, which was provided to the Plaintiff as part of the Associate Handbook, an employee will receive a written warning #1 if the employee has, in a rolling six month period, either (1) three unexcused tardies, late arrivals, and/or leave

earlies, or (2) two unexcused absences. Another unexcused absence, late arrival, or leave early within ninety days of earning the written warning #1 will result in a written warning #2. Another unexcused absence, late arrival, or leave early within a ninety day period after earning a written warning #2 results in termination of employment. Approved FMLA absences are excused absences under the Attendance Policy.

At around 2:45 p.m. on May 22, 2014, the Plaintiff's lanyard with retractable cord caught on a stationary ladder that he was hurriedly passing. It caused him to fall, and the Plaintiff heard a pop in his back. During his break, the Plaintiff went to his car, took a couple of over-the-counter pain relievers, and finished the remainder of his shift, which ended at 4:45 p.m. He was not able to sleep that night and arrived late to work the next day, May 23. That day, the Plaintiff was issued a written warning #1, with an effective date of May 9, 2014, which stated that the Plaintiff had unexcused absences on March 4, March 5, and March 28, 2014. The March 4 and 5 absences were counted as one occurrence. Because the Plaintiff was late to work on May 23, he was also issued a written warning #2. The listed absences were the same absences from the warning #1 plus a partial absence for his late arrival on May 23. The Plaintiff complained about being issued both his written warning #1 and written warning #2 on the same date, May 23, even though the first one had an effective date of May 9.[1]

According to the Defendant's written work-related injury policy, employees must "immediately" report any "work-related accident . . . no matter how small" to the employee's

---

[1] The Defendant's Chief Financial Officer testified, by affidavit, that the Defendant relies on the effective date of a written warning, rather than its issuance date, when administering its Attendance Policy. He explained that written warnings may not be issued on the actual date of a violation for various reasons, such as the unavailability of the issuing manager, or administrative oversight. As a consequence, it is not unusual for an employee to receive two written attendance warnings on the same date with different effective dates.

team leader. (Ex. 6 to Robey Dep., ECF No. 24-1 at 29.) The Plaintiff did not report his accident to any management representative either when it occurred, or during the remaining two hours of his shift. Instead, the Plaintiff reported the injury by sending a text message to the Defendant's Safety Manager, Dudley Berthold, that was time stamped 5:40 p.m. That evening, he also sent a text message to his supervisor, Team Leader Corey Watson. On May 23, the Defendant suspended the Plaintiff pending further investigation into why he did not timely report his accident as required by the Defendant's policy. The suspension was in place until May 27, 2014.

On May 27, the Plaintiff was seen at RediMed, the Defendant's worker's compensation medical provider. Dr. Julie Stark cleared the Plaintiff to return to work that day. The Defendant made three attempts to contact the Plaintiff to advise him that he was still employed and to arrange for his return to work on May 28. The Plaintiff did not agree with Doctor Stark's assessment, and he did not go to work on May 28. Instead, he contacted Jenna Valentine in the Defendant's Human Resources department through text message, indicating that he did not agree with the doctor's assessment and was hurt. On the morning of May 29, Valentine emailed the Plaintiff information concerning how to apply for FMLA leave.

The Defendant outsources administration of its FMLA leave to a third-party administrator named FMLASource. The Plaintiff completed paperwork to request intermittent leave from May 30, 2014, through the following May. FMLASource required that the Plaintiff provide it with medical certification by June 17 to support the request. The Plaintiff also requested continuous leave from May 28, 2014, through June 4, 2014. Medical certification for that request was also due by June 17 before FMLASource would approve the leave.

In a letter dated June 18, 2014, FMLASource informed the Plaintiff that his request for

5

intermittent leave was denied because no medical certification had been received. It denied the Plaintiff's request for continuous leave for the same reason. Meredith Pitts from the Defendant's Human Resources department contacted the Plaintiff by email to tell him that the FMLA certification paperwork had not been received, and the third-party vendor had denied his request. She advised that, because he already had a level 2 written warning for attendance and his leave had not been approved, his employment would normally be terminated as of that day. However, the Defendant was giving the Plaintiff five additional days to supply the certification. Pitts advised the Plaintiff that if the paperwork was received by June 24, and his leave was approved, his employment would continue. However, if his leave was not approved, the Defendant would terminate his employment per the attendance policy.

FMLASource received medical certification, but the documentation did not cover the Plaintiff's absences for May 28, 31, June 1, or 2. No medical provider excused the Plaintiff from work on those dates due to his medical condition. As a result, FMLASource never approved his FMLA leave request. The Defendant's Human Resources department notified Robey by text message on June 24, followed up by certified letter on June 26, that his employment was terminated on June 24 for violating the Attendance Policy as a result of having an additional unexcused absence within ninety days after the May 23 effective date of his written warning #2.

**ANALYSIS**

In its Motion for Summary Judgment, the Defendant analyzes the Plaintiff's claim under a retaliation theory. The FMLA provides that it is unlawful for any person to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful"

by the FMLA. 29 U.S.C. § 2615(a)(2). The Act also makes it unlawful to "discharge" or "discriminate" against a person for taking part in proceedings or inquiries under the FMLA. 29 U.S.C. § 2615(b). The Court will take the same approach as that advanced in the Defendant's Motion, and will analyze whether a reasonable jury could conclude that the Defendant retaliated against the Plaintiff for his FMLA activity. However, the Plaintiff's allegations also appear to include an FMLA interference claim. The Plaintiff believes that he was entitled to receive FMLA leave but that his employer interfered so that he could not get it, which then led to his unexcused absences and termination. (*See, e.g.*, Pl.'s Dep. 84, ECF No. 24-1.) To advance an interference claim, the Plaintiff must present evidence upon which a jury could rely to find that his employer denied him FMLA benefits to which he was entitled. *See Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010) (setting forth elements of an FMLA interference claim).

Although the Defendant does not specifically analyze an interference claim, it presents evidence in the context of the retaliation claim to show that the Plaintiff did not engage in protected activity, and this evidence is also relevant to the interference claim. The Defendant designates evidence that its third-party provider denied the Plaintiff leave because he failed to provide the requisite medical certification. It is not improper to require medical certification, so the failure to timely return the medical certification is evidence that undermines any claim that the Plaintiff was entitled to benefits. *See Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 837 (7th Cir. 2014) ("When an employee initially requests FMLA leave, the employer may take the employee at his word and grant the request, or 'may request certification by the employee's healthcare provider.'") (first citing *Kauffman v. Fed. Exp. Corp.*, 426 F.3d 880, 886 (7th Cir.

7

2005); then citing 29 U.S.C. § 2613(a))). Although the Plaintiff acknowledges that he did not provide timely certification, he claims this was because the RediMed doctor, who was going to sign his medical certification, changed his mind because Dudley Berthold, the Defendant's Safety Manager, directed him not to sign it. (Pl.'s Dep. 84.) In making this claim, the Plaintiff himself recognized that his allegation was based on conjecture:

> That's speculation. You're right. But I just know what [Berthold] said, hey, this guy's not hurt. We need to get rid of him. He's troublesome. And, like I said, that's speculation based on what I've learned in my life and what I've seen. And I know that, working there, that [the doctor and Berthold] obviously know each other and that [Berthold] interfered in the process of treatment.

(Pl.'s Dep. 84–85.)

Uncorroborated testimony cannot prevent summary judgment if the claim is based on "speculation, intuition, or rumor" or is inherently implausible. *Darchak v. Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009) (citing *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003)). As "speculation may not be used to manufacture a genuine issue of fact," *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (quoting *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001)), and speculation is all that the Plaintiff offers in support of claim that the Defendant denied him FMLA benefits to which he was entitled, there is no admissible evidence in the record before the Court that the Defendant interfered with any attempt by the Plaintiff to receive FMLA leave. The Plaintiff does not present any evidence that would permit a reasonable jury to believe his version of events—that the RediMed doctor would have provided the medical certification but for Berthold's interference. Accordingly, the Court will grant summary judgment in favor of the Defendant on the Plaintiff's interference claim.

The Plaintiff also alleges that his employment was terminated because he was injured and

sought FMLA leave, which the Court construes as a retaliation claim. Claims of retaliatory discharge under the FMLA are analyzed in the same manner as retaliatory discharge claims under other employment statutes, such as Title VII and the ADA. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004); *see also Malin v. Hospira, Inc.*, 762 F.3d 552, 562 (7th Cir. 2014) (stating that the "same model of proof" applied to both the plaintiff's "Title VII and FMLA retaliation claims"). Accordingly, to survive summary judgment, the Plaintiff must point to evidence supporting a reasonable inference that he was fired because he engaged in protected activity. *See Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017); *see also id.* at 697 ("[T]he dispositive question remains whether a reasonable jury could find a . . . causal link between the protected activities and adverse actions at issue"); *Tibbs v. Admin. Office of the Ill. Cts.*, 860 F.3d 502, 505 (7th Cir. 2017) ("The critical question" at the summary judgment stage "is simply whether the inference of unlawful intent is reasonable.").

A plaintiff can rely on circumstantial evidence to show retaliatory motive, such as "suspicious timing, ambiguous statements, treatment of similarly-situated employees, and any other relevant information that could permit an inference of retaliation." *Burton*, 851 F.3d at 697. However, if the Defendant has presented non-retaliatory reasons for its action, "the true question is whether the proffered reasons were pretext for retaliation." *Id.* (citing *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 539 (7th Cir. 2013)).

Pretext "involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Burton*, 851 F.3d at 698 (quoting *Harden v. Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 864 (7th Cir. 2015)). Merely disagreeing with an employer's reason does not meet this standard. *See Liu v. Cook Cty.*, 817

9

F.3d 307, 316 (7th Cir. 2016) ("'The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered' for the adverse action." (quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011))). "[T]he question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason was his reason: not a good reason, but the true reason." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006).

The Plaintiff points to various circumstances that he believes are suspicious and reveal an unlawful motive for his termination. For example, the Plaintiff thinks it suspect that he was given two attendance warnings on the same date, immediately after he was injured. A failure to follow normal procedures can support an inference of unlawful motives. *See Jajeh v. Cty. of Cook*, 678 F.3d 560, 572 (7th Cir. 2012). But the Defendant has presented evidence that it relied on the effective date of the warnings, rather than the issuance date, to administer its Attendance Policy. Moreover, it was not uncommon for a warning's issuance date to be after the effective date, or for two warnings with different effective dates to be issued on the same date. The Defendant has identified other employees who were issued multiple attendance warnings on the same day for violations that had different effective dates. These employees, Clyde Hosier, Charles West, and Stephanie Hoffacker, were also subsequently terminated for incurring an additional attendance violation within ninety days of the effective date of the second warning. None of these employees requested or took FMLA Leave. Thus, while the Plaintiff may believe that there are flaws in the Defendant's administration of its policy, he does not provide any evidence that these flaws were a cover for retaliation.

Nor does he present any evidence that his employer did not honestly believe that the Plaintiff had already received a written warning #2 when it referred him to FMLASource. When the Plaintiff did not submit supporting medical documentation, the Defendant gave the Plaintiff additional time to show that his absences should be FMLA-approved. When that certification did not excuse his absences, the Defendant acted pursuant to its uniformly enforced Attendance Policy. The Policy is facially legitimate and, as the Seventh Circuit has reiterated often, courts "do not sit as a super-personnel department," examining the wisdom of employers' business policies and decisions. *See Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 464 (7th Cir. 2014); *Traylor v. Brown*, 295 F.3d 783, 790 (7th Cir. 2002). The Defendant can administer its Attendance Policy in the manner it deems fit, as long as it does not use it to adversely impact employees who engage in protected activity.

The Plaintiff also disagrees with the suspension he received while the Defendant investigated his failure to timely report his work accident. Again, he has not presented any evidence to suggest that the Defendant was not acting in accordance with its written policies. Nor is there any evidence that the suspension impacted his eligibility for FMLA leave. None of the suspension dates were counted against the Plaintiff's attendance record.

The Plaintiff, if he had responded to the Motion for Summary Judgment, may have attempted to rely on temporal proximity as circumstantial evidence of his employer's motive. "[S]uspicious timing must be evaluated in the context of the whole record." *Taylor–Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 495–96 (7th Cir. 2014). "Deciding when the inference [of causation] is appropriate cannot be resolved by a legal rule; the answer depends on context, just as an evaluation of context is essential to determine whether an employer's

explanation is fishy enough to support an inference that the real reason must be discriminatory." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011). In addition to suspicious timing, a plaintiff must ordinarily present other evidence that the employer's explanation for the adverse action was pretext for retaliation. *Harden v. Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 864–65 (7th Cir. 2015); *Simpson v. Office of Chief Judge of Cir. Ct. of Will Cty.*, 559 F.3d 706, 713–14 (7th Cir. 2009). The context of this case, and the absence of other evidence that the Defendant's actions were a pretext for retaliation, does not warrant an inference of causation. The Plaintiff did not merely request FMLA leave and then experience an adverse employment action. The third-party administrator denied the leave for failure to timely submit the required medical certification, and the Plaintiff was absent on May 28, 31, June 1, and 2. These absences occurred within ninety days of having received a written warning #2. The Defendant has supplied evidence that every employee who has had a third attendance violation within ninety days of earning a written warning #2 has been terminated from the Defendant's employment. (Hamilton Aff. ¶ 3.e.) The Plaintiff may not have agreed with the assessment of the medical providers, but he has no evidence that the Defendant did not honestly believe that he had not been approved to take FMLA leave for any of the days he was absent.

Because the Plaintiff has failed to advance sufficient evidence that would permit a reasonable fact finder to conclude that there was a causal connection between the termination of his employment and his attempt to take FMLA leave, summary judgment for the Defendant on the Plaintiff's FMLA retaliation claim is appropriate.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 22]. The Clerk is directed to enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on October 11, 2017.

                                         s/ Theresa L. Springmann
                                         CHIEF JUDGE THERESA L. SPRINGMANN
                                         UNITED STATES DISTRICT COURT